IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

SUSAN BURNETT and DEREK BURNETT,    *

    Plaintiffs,    *

vs.    *

                             CASE NO. 4:25-CV-162 (CDL)

DYCK O'NEAL INC.,    *

    Defendant.    *

                               

O R D E R

This action involves a home equity line of credit that Susan Burnett obtained in 1999.  The loan became delinquent in 2014 when Susan lost the online payment information.  Susan tried to find out where to send her payments and believed that the loan servicer would contact her or send her a statement in the mail so she could resume her payments, but that did not happen.  In 2024, twenty-five years after the loan originated and ten years after its maturity date, Dyck O'Neal, Inc. began trying to collect on the loan on behalf of its client, Sunset1900 Trust, telling Susan that she could face foreclosure if she did not pay.  Susan alleges that Dyck O'Neal's collection efforts violated the Fair Debt Collection Practices Act and Georgia law.

Presently pending before the Court is Plaintiffs' summary judgment motion, which seeks a declaratory judgment on two factual issues, and Dyck O'Neal's summary judgment motion, which seeks summary judgment on all of Plaintiffs' claims.  As explained below,

the Court denies Plaintiffs' motion for partial summary judgment (ECF No. 20) and grants in part and denies in part Dyck O'Neal Inc.'s summary judgment motion (ECF No. 21).

Also before the Court is Dyck O'Neal's motion for judgment on the pleadings, which was filed shortly before the close of discovery and the dispositive motion deadline. Dyck O'Neal's motion for judgment on the pleadings raises substantially the same arguments regarding Plaintiffs' claims as the summary judgment motion does, though the summary judgment motion is slightly more developed, and the record now includes evidence rather than simply the pleadings. Under these circumstances, the Court focuses its review on the summary judgment motion and terminates the motion for judgment on the pleadings (ECF No. 18) as duplicative.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if

the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

The Court's local rules require a summary judgment movant to "attach to the motion a separate and concise statement of the material facts to which the movant contends there is no genuine dispute to be tried." M.D. Ga. R. 56. "Material facts not supported by specific citation to particular parts of materials in the record and statements in the form of issues or legal conclusions (rather than material facts) will not be considered by the court. Affidavits and the introductory portions of briefs do not constitute a statement of material facts." *Id.*

The Court's local rules also require a summary judgment respondent to respond to the movant's statement of material facts. *Id.* "All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate." *Id.*

Here, Dyck O'Neal did not file a response to Plaintiffs' statement of material facts. Accordingly, under Local Rule 56, the material facts contained in Plaintiffs' statement are deemed admitted. Dyck O'Neal also did not file a separate statement of material facts in support of its summary judgment motion. Instead, it filed a declaration, which is not considered a statement of material facts under the Local Rules, so the Court did not consider

3

the declaration.  The factual background section of Dyck O'Neal's brief—which is also not a separate statement of material facts that complies with the Local Rules—generally cites the declaration but is not "supported by specific citation to particular parts of materials in the record" as required by the Local Rules.  *Id.* Accordingly, the only fact statements in the record that satisfy the Local Rules are the fact statements that Plaintiffs attached to their summary judgment motion and their response to Dyck O'Neal's motion.  The Court reviewed Plaintiffs' citations to the record to determine whether there are any genuine fact disputes. *See Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008).

FACTUAL BACKGROUND

On August 30, 1999, Susan Burnett obtained a home equity line of credit loan from Bank One, N.A. in the amount of $32,000.[1]  The loan was secured by her home in Columbus, Georgia.  The deed to secure debt stated, "Grantor and Grantee agree, by this affirmative statement pursuant to O.C.G.A. section 44-14-80, to establish a perpetual or indefinite security interest in the Property conveyed to secure the Secured Debt."  Pls.' Resp. to Def.'s Mot. Summ. J. Ex. A, Security Deed ¶ 20, ECF No. 23-2.

In 2005, Susan filed a Chapter 7 bankruptcy petition.  In her schedule of creditors holding secured claims, Burnett listed Bank

---

[1] At the time, Susan's last name was Vrendenburgh.  In 2005, Susan's last name was Bishop.  She later changed her last name to Burnett.  In this order, the Court refers to her as Susan.

One, through Valley National Financial Services.  Whiteside Aff. ¶ 17, ECF No. 23-15 & Ex. N, Schedule D, ECF No. 23-15 at 51.  Bank One did not take any action in the Chapter 7 action.  Although Susan's Chapter 7 schedules included a statement of intent to reaffirm the Bank One HELOC, no reaffirmation agreement was ever filed.  Susan received a discharge on February 3, 2006, which included a discharge of Susan's personal liability for the Bank One HELOC.  Susan's home remained subject to the Bank One security deed, which required her to continue making payments on the HELOC to avoid foreclosure.

After the bankruptcy, Susan's HELOC was assigned to Asset Management Holdings, Inc.  In 2009, Susan received a letter from MIA Funding, LLC stating that MIA Funding, LLC was an "investor," that "Asset Management Holdings, LLC" was a "servicer for" Susan's "mortgage loan," number 11902, that "Asset Management Holdings, LLC" had been terminated, and that MIA Funding, LLC physically possessed the "ORIGINAL PROMISSORY NOTE AND MORTGAGE, SERVICE FILE FOR [Susan's] LOAN."  Pls.' Resp. to Def.'s Mot. Summ. J. Ex. B, Unsigned and Undated Letter from MIA Funding, LLC to S. Vrendenburgh, ECF No. 23-3.  In November 2009, Susan received a letter purporting to be from MIA Funding, LLC's managing member John Olsen regarding "Loan Number 11902," which stated that "Asset Management Holdings, LLC" may have "falsely recorded" an assignment of mortgage and instructed Susan that "under no

circumstance should funds be paid to Asset Management Holding, LLC." Pls.' Resp. to Def.'s Mot. Summ. J. Ex. C, Letter from J. Olsen to S. Vrendenburgh (Nov. 5, 2009), ECF No. 23-4. MIA Funding later sent Susan a letter stating that its new servicer was Asset Recovery Center, LLC. In April 2013, Susan received a "Statement of Account" from Asset Recovery Center regarding Account No. 11902, stating that the principal balance on the HELOC loan was $21,911.09. Pls.' Resp. to Def.'s Mot. Summ. J. Ex. E, Statement of Account, ECF No. 23-6.

Susan made payments on the HELOC loan via a mobile application until sometime in 2013, when her phone died and she lost all the stored payment information on it. Susan did not remember the name of the payment recipient. Susan reached out to Bank One and "Asset Management" to ask where to send loan payments, but she did not receive an answer. S. Burnett Dep. 11:1-10, ECF No. 23-13. Susan believed that the loan servicer would send her "a letter or a statement in the mail," but she "never received one." *Id.* at 20:14-16. The HELOC loan matured on August 25, 2014.

In July 2024, Susan received a letter from Insight Recovery Solutions, Inc. stating that Insight One Recovery Solutions had "assigned, sold or transferred the servicing of [her] mortgage loan" with loan number 213251 to Dyck-O'Neal, Inc., effective August 7, 2024. Pls.' Resp. to Def.'s Mot. Summ. J. Ex. F, Letter from Insight Recovery Solutions, Inc. to S. Vrendenburgh (July 9,

2024), ECF No. 23-7. Susan had not heard of Insight Recovery Solutions, and she thought the letter was a scam. In August 2024, Susan received a letter from Dyck O'Neal stating that her "former Insight One Recovery Solutions, Inc. mortgage loan" was "transferring to Dyck-O'Neal, Inc." and that the principal balance of the loan was $13,666.10. Pls.' Resp. to Def.'s Mot. Summ. J. Ex. G, Letter from Dyck O'Neal, Inc. to S. Vrendenburgh (Aug. 16, 2024), ECF No. 23-8. Again, she thought the letter was a scam. Although Dyck O'Neal has procedures for determining whether the person from whom it is attempting to collect a debt received a discharge in bankruptcy that might affect the debt, it did not determine whether Susan had a prior bankruptcy before it began communicating with Susan. Faulkner Dep. 35:20-36:1, ECF No. 23-14.

In September 2024, Susan received a letter from Sunset1900 Trust. It stated that Susan's loan that originated on August 30, 1999, for an original amount of $32,000 was "transferred to New Owner" on August 7, 2024, and that Dyck O'Neal was the loan servicer. Pls.' Resp. to Def.'s Mot. Summ. J. Ex. H, Letter from Sunset1900 Trust to S. Vrendenburgh (Sep. 5, 2024), ECF No. 23-9. No such assignment was recorded with the Muscogee County Superior Court; the only recorded assignment of Susan's HELOC security deed as of August 2024 was an assignment to Asset Management Holdings,

LLC from JPMorgan Chase Bank as successor to Bank One, which was recorded in 2007.

In October 2024, Susan called Dyck O'Neal about the loan. The representative informed Susan that the call was an attempt to collect a debt. Call Tr. (Oct. 8, 2024), ECF No. 23-19 at 3:20-21. Susan made a payment of $1,000 on the loan. Susan called Dyck O'Neal in November 2024 and was told that her account was "$16,266.02 delinquent." Call Tr. (Nov. 8, 2024), ECF No. 23-19 at 11:16-18. Susan said that she wanted to make a payment, but the representative said that the "investor" was asking that Susan "bring the account up to date" and asked if Susan was seeking a modification. *Id.*, ECF No. 23-19 at 12:1-24. Susan explained that she had not heard anything from the previous servicer since 2014, despite her attempts to reach out to them. The representative told Susan that "we came in as it came right into foreclosure," asked Susan if she could come up with $16,000 to bring the account current, and asked Susan if she was "willing to look into maybe a possible modification." *Id.*, ECF No. 23-19 at 14:7-15:16. By November 8, 2024, Dyck O'Neal learned that Susan had a prior Chapter 7 discharge granted. Faulkner Dep. 35:10-19.

A Dyck O'Neal representative called Susan back on November 11, 2024, to discuss a loan modification. At the beginning of the call, the representative stated that "Dyck O'Neal is a debt collector." Call Tr. (Nov. 11, 2024), ECF No. 23-19 at 21:15-17.

Susan made a payment of $425 that day and agreed to make monthly payments of $425; over the next few months, Susan made monthly payments totaling $2,550.  Susan received a Loss Mitigation Packet from Dyck O'Neal in December 2024, which stated that the "lien balance" was $13,201.69 and notified Susan that she may qualify for a loan modification.  Pls.' Resp. to Def.'s Mot. Summ. J. Ex. J, Letter from Dyck O'Neal to S. Vrendenburgh (Dec. 27, 2024), ECF No. 23-11.  The Loss Mitigation Packet contains a "Notice of Attempt to Collect Debt" and states that if Susan wanted to "avoid foreclosure," she must call Dyck O'Neal regarding a loan modification.  *Id.*

Susan called Dyck O'Neal on February 3, 2025.  The representative stated, "Dyck O'Neal is a debt collector."  Call Tr. (Feb. 3, 2025), ECF No. 23-19 at 30:25-31:1.  Susan told the representative that according to her paperwork (the Loss Mitigation Packet), her outstanding "lien balance" was $13,201.69. *Id.*, ECF No. 23-19 at 31:7-9.  Susan told the representative that she wanted to pay off that amount via certified check and be "done."  *Id.*, ECF No. 23-19 at 31:16-21.  The representative responded that the "lien amount" was not the same as the "payoff" amount and that Susan would have to request a payoff amount and determine whether she could pay it.  Susan received a loan statement dated January 31, 2025, which stated that the total amount due was $15,052.30.  The letter stated that it was an

9

attempt to collect a debt, that the loan had been delinquent since June 25, 2014, and that failure to bring the loan current may result in foreclosure. Pls.' Resp. to Def.'s Mot. Summ. J. Ex. Q, Jan. 31, 2025 Loan Statement, ECF No. 23-18. Then, in February 2025, Susan received an electronic statement with a payoff amount of $26,894.65, which included a principal balance of $13,201.69 and interest due of $14,379.06. The statement says that it is an attempt to collect a debt. In May 2025, Susan called Dyck O'Neal to discuss why the payoff amount was so high. The representative stated, "Dyck O'Neal is a debt collector." Call Tr. (May 6, 2025), ECF No. 23-19 at 37:15-16. Susan offered to pay Dyck O'Neal $10,116.10 to satisfy the debt, which represented the principal balance of $13,666.10 as of August 2024 minus the $3,550 she had paid since October 2024. That offer was not accepted.

Susan and her husband Derek Burnett filed this action on May 23, 2025, asserting claims under the Fair Debt Collection Practices Act and Georgia law. In July 2025, after Plaintiffs filed this action, an assignment of Susan's HELOC security deed was recorded in the Superior Court of Muscogee County. Pls.' Resp. to Def.'s Mot. Summ. J. Ex. P, Corporate Assignment of Deed to Secure Debt, ECF No. 23-17. The assignment states that the assignor is Asset Management Holdings, LLC, and the assignee is Sunset1900 Trust. The assignment date is May 29, 2025, six days after Plaintiffs filed this action and more than six months after Sunset1900 Trust

10

represented to Susan that her loan had been assigned to a new owner.

DISCUSSION

Susan asserts claims against Dyck O'Neal for (1) violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 to 1692p ("FDCPA"), (2) intentional infliction of emotional distress, and (3) the Georgia Racketeer Influenced and Corrupt Organizations Act, O.C.G.A. §§ 16-14-1 to 16-14-12 ("Georgia RICO"). She also claims that Dyck O'Neal engaged in conduct that warrants an award of attorney's fees under O.C.G.A. § 13-6-11, and she seeks a declaration that the HELOC security deed is now unenforceable via foreclosure and that Susan has no personal liability on the HELOC debt. Susan's husband Derek asserts a loss of consortium claim. Presently pending before the Court are Dyck O'Neal's summary judgment motion as to all of Plaintiffs' claims and Plaintiffs' motion for summary judgment on the declaratory judgment claim. The Court addresses each claim in turn.[2]

---

[2] In a footnote of its summary judgment motion, Dyck O'Neal asserts that Plaintiffs' complaint is an impermissible shotgun pleading. *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (defining a shotgun pleading and noting that the typical remedy is to allow the plaintiff to file an amended complaint that cures the deficiencies and gives that defendant adequate notice of the basis for each claim). Here, Dyck O'Neal did not raise this argument until after discovery closed, and it did not seek dismissal on shotgun pleading grounds or argue that it did not have adequate notice of the factual basis for each claim. The Court thus declines to take any action on the alleged shotgun pleading issue.

## I.    Susan's Fair Debt Collection Practices Act Claim

The FDCPA provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e. More specifically, the FDCPA prohibits a false representation of "the character, amount, or legal status of any debt," the representation that nonpayment will result in foreclosure "unless such action is lawful and the debt collector or creditor intends to take such action," threatening an action like foreclosure if it "cannot legally be taken," using "any false representation or deceptive means to collect or attempt to collect any debt," and collecting any amount that is not "expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. §§ 1692e(2)(A), (4), (5), (10) & 1692f(1).

Susan claims that Dyck O'Neal is a debt collector within the meaning of the FDCPA and that it violated the FDCPA by trying to collect on her HELOC loan after it became unenforceable.  Dyck O'Neal's summary judgment motion on Susan's FDCPA claim focuses solely on whether Dyck O'Neal is a "debt collector."  Dyck O'Neal argues that it does not meet the definition of "debt collector," but it did not clearly explain why.  Instead, it offered a string citation of inapposite cases without any argument about why any of

12

the cases apply here.[3]  A debt collector "means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  The statutory definition of "debt collector" has several exclusions, but Dyck O'Neal did not clearly argue or present evidence that any exclusion applies here.

There is no dispute that Susan's HELOC loan was in default before Dyck O'Neal began servicing it.  And, the present record reveals that Dyck O'Neal used the telephone and mails in an attempt to collect debts that it asserted were owed or due to another.  In nearly every communication Dyck O'Neal had with Susan, it represented that it was a debt collector seeking to collect a debt on behalf of another company and that the communications would be used to collect a debt.  Based on this record, there is enough evidence for a reasonable jury to conclude that Dyck O'Neal is a

---

[3] *See Maddox v. Aldridge Pite, LLP*, No. 23-12853, 2024 WL 1475463, at *3 (11th Cir. Apr. 5, 2024) (per curiam) (finding that a complaint did not allege any facts to suggest that a firm which tried to initiate a nonjudicial foreclosure was a "debt collector"); *Fenello v. Bank of Am.*, NA, 577 F. App'x 899, 902 (11th Cir. 2014) (per curiam) (concluding that a bank was not a "debt collector" because the debt was not in default when the bank became the servicer); *Davidson v. Litton Loan Servicing LP*, No. 1:09-CV-1681-RWS/AJB, 2010 WL 11647011, at *11 (N.D. Ga. Aug. 10, 2010), *report and recommendation adopted*, No. 1:09-CV-1681-RWS, 2010 WL 11647028 (N.D. Ga. Sep. 10, 2010) (recommending denial of the plaintiff's summary judgment motion on whether the defendant was a "debt collector" because the defendant denied that it was in the business of collecting debts and the plaintiff did not present any evidence to show that the defendant regularly attempted to collect debts owed to another).

debt collector within the meaning of the FDCPA.  Dyck O'Neal's summary judgment motion on this ground is denied.

## II.  Susan's Intentional Infliction of Emotional Distress Claim

Susan's next claim is for intentional infliction of emotional distress.  To prevail on such a claim, Susan must show that Dyck O'Neal engaged in "intentional or reckless" conduct that was "extreme and outrageous" and that Susan suffered "severe" emotional distress as a result of the conduct.  *Bazemore v. U. S. Bank Nat'l Ass'n*, 872 S.E.2d 491, 500 (Ga. Ct. App. 2022).  In its summary judgment motion, Dyck O'Neal argues that its conduct was not extreme and outrageous.  To be actionable as intentional infliction of emotional distress, the conduct "must go beyond all reasonable bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community."  *Id.* (quoting *United Parcel Serv. v. Moore*, 519 S.E.2d 15, 17 (Ga. Ct. App. 1999)).  Relentlessly pursuing foreclosure despite a "known error" in the handling of an account can constitute extreme and outrageous conduct, but "sloppy business practices" are not enough to establish intentional outrageous conduct.  *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1258-59 (11th Cir. 2016).

Here, Susan presented evidence from which a reasonable juror could conclude that that Dyck O'Neal was attempting to collect a debt on behalf of a client that did not own the debt, that the debt had become unenforceable via foreclosure by virtue of O.C.G.A.

14

§ 44-14-80, and that Susan's personal liability on the loan was discharged in the Chapter 7 proceeding.[4]  But Susan did not point to any evidence that Dyck O'Neal *knew* about any of these problems or acted with a conscious disregard for the risk of these problems. She also does not contend that she notified Dyck O'Neal of these issues before she filed this action.  Rather, she appears to assert that Dyck O'Neal did not do a reasonable investigation to determine whether its client had enforceable rights to the debt.  Susan did not point to any binding authority that this type of negligence is sufficient to establish the "intentional or reckless" and "extreme and outrageous" requirements.  Accordingly, the Court finds that Susan did not present enough evidence to create a genuine fact

---

[4] The present record shows that Susan's HELOC loan originated in 1999, that the HELOC agreement had an express agreement to establish a perpetual or indefinite security interest in Susan's property under O.C.G.A. § 44-14-80, and that the HELOC loan matured on August 25, 2014. Under O.C.G.A. § 44-14-80, where the parties agree "to establish a perpetual or indefinite security interest in the real property conveyed to secure a debt or debts, the title" to the real property conveyed to secure the debt "shall revert at the expiration of the later of (A) seven years from the maturity of the debt or debts or the maturity of the last installment thereof as stated or fixed in the record of conveyance or, if not recorded, in the conveyance; or (B) 20 years from the date of the conveyance as stated in the record or, if not recorded, in the conveyance." O.C.G.A. § 44-14-80(a)(1). Dyck O'Neal did not point to any evidence of an event that tolled reversion of the title. Accordingly, based on the present record, a reasonable jury could conclude that title to Susan's real property reverted to her on August 25, 2021. After the reversion date, foreclosure is barred. *See* O.C.G.A. §§ 44-14-81 & 44-14-83; *Mike's Furniture Barn, Inc. v. Smith*, 803 S.E.2d 800, 803 (Ga. Ct. App. 2017) ("If title has reverted to the grantor under this statute, all actions to foreclose upon and to recover the property are barred.").

dispute on her intentional infliction of emotional distress claim, and Dyck O'Neal is entitled to summary judgment on this claim.

## III. Susan's Georgia RICO Claim

Susan's next claim is under Georgia RICO, which makes it "unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." O.C.G.A. § 16-14-4(a).  To establish a Georgia RICO claim, a plaintiff must show that the defendant committed at least two acts of racketeering activity in furtherance of its scheme.  Here, Susan identified three predicate acts of racketeering activity: mail fraud under 18 U.S.C. § 1341, wire fraud under 18 U.S.C. § 1343, and theft by deception under O.C.G.A. § 16-8-3.  She contends that Dyck O'Neal induced her to make payments on the HELOC by making false representations regarding the legal status of her debt by mail and telephone.

To establish mail or wire fraud, a plaintiff must demonstrate that the defendant "(1) intentionally participate[d] in a scheme to defraud another of money or property and (2) use[d] the mails or wires in furtherance of that scheme." *Wayne Johnson for Cong., Inc. v. Hunt*, No. 23-10460, 2024 WL 471938, at *4 (11th Cir. Feb. 7, 2024) (per curiam) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)).  "Under the mail and wire

16

fraud statutes, a plaintiff only can show a scheme to defraud if he proves that some type of deceptive conduct occurred." *Id.* (quoting *Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 521 (11th Cir. 2000)). "Such deceptive conduct includes 'knowingly making false representations,' 'concealing material facts,' and making statements 'with reckless indifference to their truth or falsity.'" *Id.* (quoting *United States v. Sawyer*, 799 F.2d 1494, 1502 (11th Cir. 1986) (per curiam)). To establish theft by deception, Susan must show that Dyck O'Neal obtained "property by any deceitful means or artful practice with the intention of depriving the owner of the property." O.C.G.A. § 16-8-3(a). "A person deceives if he intentionally . . . [c]reates or confirms another's impression of an existing fact or past event which is false and which the accused knows or believes to be false[.]" O.C.G.A. § 16-8-3(b)(1).

Here, Susan did not point to evidence that Dyck O'Neal had actual knowledge that any of its statements were false. She also does not contend that she notified Dyck O'Neal of any issues with its statements before she filed this action. Rather, she suggests that Dyck O'Neal *should have known* that the statements were false and that if Dyck O'Neal had conducted a reasonable inquiry before making any representation to Susan, it would have discovered that at least some of its statements about the legal status of her debt were false. Susan did not present any authority establishing that

17

this type of negligence is enough to satisfy the intent requirement for the predicate acts of mail fraud, wire fraud, or theft by deception. Without evidence to create a genuine fact dispute on the requisite intent for each predicate act, Susan's Georgia RICO claim fails, and Dyck O'Neal is entitled to summary judgment on this claim.[5]

## IV.   Derek's Loss of Consortium Claim

In a footnote, Dyck O'Neal summarily argues that it is entitled to summary judgment on Derek Burnett's loss of consortium claim for reasons to be explained later in its brief, but Dyck O'Neal did not include the promised discussion of the claim. Accordingly, Dyck O'Neal did not establish that it is entitled to summary judgment on Derek's loss of consortium claim, and that portion of its motion is denied.

## V.   Plaintiffs' O.C.G.A. § 13-6-11 Claim

Dyck O'Neal argues that Plaintiffs' claim for litigation expenses under O.C.G.A. § 13-6-11 cannot survive summary judgment. That statute permits a jury to allow expenses of litigation as part of the damages "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." O.C.G.A. § 13-6-11. Dyck O'Neal

---

[5] Plaintiffs seek punitive damages in connection with Susan's Georgia RICO and intentional infliction of emotional distress claims. Having concluded that Plaintiffs did not point to sufficient evidence to create genuine fact disputes on these claims, the Court need not address their arguments regarding punitive damages arising from these claims.

argues because Plaintiffs did not make a settlement demand, there can be no award of litigation expenses under O.C.G.A. § 13-6-11. But the relevant question is whether there was bad faith in the underlying transaction or whether a plaintiff had to file an action where no bona fide controversy exists. Dyck O'Neal did not clearly address these issues or explain why no genuine fact dispute exists on this claim. Thus, Dyck O'Neal is not entitled to summary judgment on the O.C.G.A. § 13-6-11 litigation expenses claim.

## VI.   Susan's Declaratory Judgment Claim

Plaintiffs seek a declaration that (1) the HELOC security deed became invalid on August 25, 2021, and title to Susan's home reverted to Susan by operation of law, and (2) Susan had no personal liability on the debt secured by the security deed after August 25, 2020. The parties filed cross-motions for summary judgment on this claim.

Dyck O'Neal argues that the Court cannot make the declaration Plaintiffs seek because the purported owner of the note and security deed is not a party to this action. Plaintiffs argue that because Dyck O'Neal acted on behalf of the purported owner in attempting to collect a debt from Susan, Dyck O'Neal is a sufficient representative to defend the declaratory judgment claim on behalf of the purported owner. But Plaintiffs did not clearly point to evidence that Dyck O'Neal has the requisite authority to be considered the deed holder's representative for purposes of the

19

declaratory judgment action regarding enforceability of the HELOC loan. While the Court is satisfied that a jury can make findings of fact regarding the HELOC loan necessary to determine whether Dyck O'Neal violated the Fair Debt Collection Practices Act, the Court is not convinced that it may enter a declaratory judgment that is effective against a non-party purported owner of the note and security deed. Plaintiffs did not clearly point to any binding authority that would permit such a declaratory judgment based on the present record. Accordingly, Plaintiffs' summary judgment motion on this issue is denied, and Dyck O'Neal's summary judgment motion on this issue is granted.

CONCLUSION

For the reasons set forth above, the Court denies Plaintiffs' motion for partial summary judgment (ECF No. 20). The Court grants Dyck O'Neal Inc.'s summary judgment motion (ECF No. 21) as to Susan's claim for intentional infliction of emotional distress, Susan's Georgia RICO claim, and Plaintiffs' declaratory judgment claim. The Court denies Dyck O'Neal's summary judgment motion as to Susan's Fair Debt Collection Practices Act claim, Derek's loss of consortium claim, and Plaintiffs' request for litigation expenses under O.C.G.A. § 13-6-11.

IT IS SO ORDERED, this 7th day of May, 2026.

s/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

20